**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ALDO ORTEGA,** | ) |
| **#M27539,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )     **Case No. 17-cv-01091-MJR** |
| | ) |
| **DONALD SHELTON,** | ) |
| **ARTHUR MAE PERKINS,** | ) |
| **PETE FISHER,** | ) |
| **TRACEY BUCKLEY,** | ) |
| **ERNEST W. VONZANT, II,** | ) |
| **CONNIE HALLIDAY,** | ) |
| **DAVID RAINS,** | ) |
| **D. WAYNE DUNN,** | ) |
| **VONETTA HARRIS,** | ) |
| **WILLIAM NORTON,** | ) |
| **RANDY MOSS,** | ) |
| **CRAIG FINDLEY,** | ) |
| **JOHN BALDWIN,** | ) |
| **KENNETH D. TUPY,** | ) |
| **BRITNEY HUDLESTON,** | ) |
| **KACEY REDMAN,** | ) |
| **APRIL WAMPLER,** | ) |
| **ANN LAHR,** | ) |
| **R. ERICKSON,** | ) |
| **GARY DUNCAN, and** | ) |
| **SALVADOR DIAZ,** | ) |
| | ) |
| **Defendants.** | ) |

# <u>MEMORANDUM AND ORDER</u>

**REAGAN, Chief District Judge:**

This matter is now before the Court for preliminary review of the First Amended

Complaint filed by Plaintiff Aldo Ortega.[1]  (Docs. 13, 13-1).  Plaintiff is a convicted sex

---

[1] Plaintiff filed an Amended Complaint (Doc. 11) while the Court was in the process of screening the original Complaint (Doc. 1).  The Amended Complaint was re-filed with exhibits as the "First Amended Complaint" (Doc. 13, 13-1).  The First Amended Complaint supersedes and replaces all prior versions of

1

offender, who was released on parole or mandatory supervised release[2] in December 2013. (Doc. 13, p. 5). He was taken back into the custody of the Illinois Department of Corrections ("IDOC") on August 5, 2015, for allegedly violating the conditions of his parole. (Doc. 13, pp. 4-5). In the process, Plaintiff's host site was deemed unsuitable, and no other site has been approved. (Doc. 13, p. 4). As a result, Plaintiff remains in IDOC custody. *Id.*

Plaintiff is now incarcerated at Robinson Correctional Center ("Robinson"). (Doc. 13, p. 2). He brings this action pursuant to 42 U.S.C. § 1983 against various IDOC officials and Prison Review Board ("PRB") members who were involved in denying his release on parole for lack of a suitable host site. (Doc. 13, pp. 2, 17-19). Plaintiff maintains that these officials have conspired to violate his rights under the Fourth, Eighth, and Fourteenth Amendments and Illinois state law. *Id.* He seeks declaratory judgment, monetary damages, and injunctive relief. (Doc. 13, pp. 19-20).

This case is now before the Court for preliminary review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

---

the complaint (Docs. 1, 8, 11) and renders them void. Therefore, this screening order focuses only on the First Amended Complaint (Docs. 13, 13-1).

[2] Plaintiff refers to parole and mandatory supervised release ("MSR") interchangeably in the First Amended Complaint. For ease of reference, this Court refers to either basis for release from prison as "parole." There is a difference between parole and MSR under Illinois law, but in both contexts, the IDOC precludes release of a person who lacks an approved host site. *See People v. Lee*, 979 N.E.2d 992, 1000-01 (Ill. App. Ct. 4th Dist. 2012) (describing distinction between "parole" and "MSR").

*Id.* An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations in the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## First Amended Complaint

According to the First Amended Complaint (Docs. 13, pp. 1-20) and exhibits (Doc. 13-1, pp. 1-148), Plaintiff was found guilty of reproducing and selling child pornography in Cook County Case No. 11 CR 0870901. (Doc. 13-1, p. 4). He was sentenced to four years in IDOC custody with a parole term of three years to life. (Doc. 13-1, pp. 4, 8). On December 13, 2013, Plaintiff was released from Centralia Correctional Center on parole. *Id.* After serving 19½ months of his parole term, Plaintiff was taken back into custody on August 5, 2015. (Doc. 13, p. 5; Doc. 13-1, p. 8). He was temporarily housed at Stateville Correctional Center.

On August 10, 2015, Plaintiff was served with a Parole Violation Report issued by Parole Agent Joseph Blaha. (Doc. 13, p. 5; Doc. 13-1, p. 7). The report cited Plaintiff for violations of Condition #15 for possession of alcohol, smart cell phones, a computer, and sexually explicit material by a sex offender. (Doc. 13-1, p. 7). It also cited Plaintiff for violating Condition #16 for failure to comply with sex offender counseling, computer and internet restrictions, and GPS monitoring. *Id.* Because these alleged violations occurred at his original host site (*i.e.*, his

parents' residence), Agent Blaha requested that the site be deemed unsuitable in the future.[3] (Doc. 13-1, pp. 8-10).

Plaintiff transferred to Big Muddy River Correctional Center ("Big Muddy") the same day he received the Parole Violation Report. (Doc. 13, p. 5). A parole revocation hearing was scheduled before the PRB for September 2015. *Id.* On the date of the hearing, Plaintiff met with Gary Duncan (a PRB member) to review the Parole Violation Report and answer questions about the charges. *Id.* Duncan consulted with D. Wayne Dunn, another PRB member, and decided to reschedule Plaintiff's parole revocation hearing for March 2016. *Id.*

On March 14, 2016, Plaintiff met with an unidentified housing unit counselor and asked the counselor to inform the PRB members that he wished to be declared a parole violator. (Doc. 13, p. 6). Plaintiff believed that he would be eligible for immediate release from IDOC custody if he was declared a violator. The following day, he met with Dunn during the rescheduled PRB hearing. *Id.* Dunn asked Plaintiff if he had an alternative host site address to submit. *Id.* Plaintiff stated that he did not. *Id.* Dunn explained that he would order Plaintiff's release on parole once a suitable host site was located. *Id.* In the meantime, Dunn rescheduled the PRB hearing for a later date. *Id.* When Plaintiff asked Dunn to declare him a violator, Dunn stated that he was not allowed to revoke Plaintiff's parole. *Id.* Dunn then instructed Plaintiff to sign the PRB Order rescheduling his revocation hearing. *Id.*

Plaintiff initially refused to sign the PRB Order, and Connie Halliday was called over to respond to Plaintiff's questions and concerns. (Doc. 13, pp. 6-7). After Halliday assured

---

[3] The allegations offered in connection with Parole Agent Blaha represent background information. Plaintiff did not name Joseph Blaha as a defendant in this action. He separately pursued claims against the parole agent in the United States District Court for the Northern District of Illinois. *See Ortega, et al. v Blaha, et al.*, No. 17-cv-05610 (N.D. Ill.). That suit was dismissed for failure to state a claim upon which relief may be granted on November 9, 2017. (Doc. 20). In the instant case, Plaintiff asserts claims against PRB members and IDOC officials who have denied him release from confinement for lack of a suitable host site.

Plaintiff that he would receive a copy of the PRB Order and Memorandum in the mail, he signed it. *Id.* In the process of doing so, Plaintiff noticed that Dunn changed the alleged violations from Conditions #15 and #16 to Condition #5, based on his lack of a suitable host site. *Id.* Plaintiff maintains that Dunn lacked authority to make this change to the original Parole Violation Report. *Id.* Soon after returning to his housing unit, Plaintiff submitted his parents' home address as his proposed host site, and Halliday deemed the host site unsuitable on March 29, 2016. *Id.*

Plaintiff began filing grievances to complain about the PRB's decision. (Doc. 13, p. 8). Plaintiff requested a copy of the signed PRB Order and Memorandum from Big Muddy's Records Office. *Id.* His document request was denied. *Id.* Plaintiff was informed that offenders are not allowed to obtain copies of their master files, and no such memorandum could be located in his master file. *Id.* He was further advised that prison review files are stored in Springfield, Illinois. *Id.* Plaintiff then sent a request for documentation pursuant to the Freedom of Information Act ("FOIA") to the PRB's main office in Springfield, Illinois. *Id.* Kenneth D. Tupy, who was serving as a FOIA officer at the time, responded to the request. *Id.* Ernest VonZant II, the Records Office Supervisor at Big Muddy, issued the supporting Memorandum. *Id.* It described the action to be taken against Plaintiff and directed Tracey Buckley, a PRB member, to "guide the action." *Id.* Plaintiff claims that the counselor from his housing unit colluded with "Records," "Field Services," and the PRB to force him back out on parole while also denying his request to return to his original host site.[4] *Id.*

On or around March 25, 2016, Plaintiff wrote a letter to Craig Findley, the PRB Chairman, asking that his parole be revoked. (Doc. 13, p. 9). In the same letter, Plaintiff stated that he no longer wished to be eligible for release on parole. *Id.* He received no response to the letter. *Id.*

---

[4] Plaintiff does not identify any particular defendant in connection with this assertion. (Doc. 13, p. 8).

Plaintiff also asked his housing unit counselor for a copy of the procedures necessary for calling witnesses to testify at his next PRB hearing, which was rescheduled for August 2016. (Doc. 13, p. 10). Two weeks later, he asked about the status of his request to call witnesses. *Id*. Before receiving a response, he was transferred to Robinson on August 10, 2016. *Id*.

Plaintiff asked his new housing unit counselor at Robinson, B. Hudleston, whether his witnesses would be present at the upcoming parole revocation hearing. (Doc. 13, p. 10). Hudleston informed Plaintiff that he must comply with the process in place at Robinson for calling witnesses. *Id*. Plaintiff was unable to complete this process before his parole revocation hearing on September 7, 2016. *Id*. Although a Notice of Parole Revocation Hearing was sent to him through the institutional mail on August 31, 2016, *i.e.*, seven days before the rescheduled hearing date of September 7, 2016, Plaintiff did not receive the notice seven business days before the hearing. *Id*. As a result, Plaintiff lacked sufficient time to call witnesses. *Id*.

When Plaintiff appeared at the hearing before PRB Member Donald Shelton on September 7, 2016, Shelton acknowledged the pending request for witnesses and offered to reschedule the hearing. (Doc. 13, p. 10). Shelton also explained that Plaintiff would not need witnesses, if he wished to be declared a violator. (Doc. 13, p. 11). At the same hearing, Shelton declared Plaintiff to be in violation of Condition #5 for lack of a suitable host site. *Id*. Shelton concluded that Plaintiff should be re-confined for a period of two years from August 5, 2015, and refused to credit Plaintiff with twenty-two days he was allegedly held beyond his original release date at Centralia in 2013. *Id*. In addition, Shelton refused to revoke Plaintiff's parole, which Plaintiff claims was "required by law and not discretionary." *Id*.

In January 2017, Plaintiff completed a parole plan and returned it to Robinson's Field Services Office. (Doc. 13, p. 11). Once again, he listed his parents' address as his proposed host site. *Id*. The proposed host site address was denied as unsuitable in March 2017. *Id*.

Plaintiff filed a grievance at Robinson to challenge this finding on March 8, 2017, but Grievance Officer Mickey Walton denied it. (Doc. 13, p. 11). Clinical Services Supervisor R. Erickson, allegedly blamed the PRB in Springfield for the decision. *Id*. Plaintiff filed an appeal of the decision with the Administrative Review Board ("A.R.B."). *Id*.

Plaintiff's expected release date (*i.e.*, August 4, 2017) "came and went." (Doc. 13, p. 12). He began writing to the prison administration, including Warden David Rains, Warden Randy Moss, and several other staff and counselors. *Id*. He then filed a grievance to complain about his continued confinement beyond the expected release date. *Id*. On August 7, 2017, Plaintiff received a copy of a new Parole Violation Report that was issued by the IDOC. *Id*.

On August 14, 2017, Plaintiff met with Records Office Supervisor Britney Hudleston. (Doc. 13, p. 13). When Plaintiff explained that he was supposed to be released no later than August 5, 2017, Hudleston informed him that he was wrong. *Id*. Hudleston stated that "3 to life parole was for life and if no host-site was submitted ever, then he would not be released." *Id*. Plaintiff explained that his parole was revoked by Donald Shelton on August 7, 2016, and the two-year confinement period expired on August 5, 2017. *Id*. Hudleston told Plaintiff that his parole was not revoked. *Id*.

He received a response to his grievance seeking immediate release on August 11, 2017. (Doc. 13, p. 14). Erickson's response indicated that Plaintiff failed to provide a suitable host site. *Id*. On August 14, 2017, Plaintiff then wrote to the PRB Chairman Craig Findley and to IDOC Acting Director John Baldwin. *Id*. He informed both that he was being unlawfully

confined and identified violations of the law by the IDOC and PRB. *Id.* He received a response denying one of his grievances from April Wampler, a Robinson caseworker, on August 24, 2017. *Id.* The decision was approved by Warden David Rains. *Id.*

He separately explained his situation to Warden Rains on August 27, 2017. (Doc. 13, p. 15). The warden told Plaintiff that the only reason he was not released was because he had no suitable host site. *Id.* Plaintiff explained that his original host site (*i.e.*, his parents' home) was suitable for 19½ months and remained suitable. *Id.* He also pointed out that none of his other family members or friends were ever contacted about placement. *Id.* When Plaintiff asked if he would receive two years of credit for the time he was incarcerated between August 5, 2015 and August 5, 2017, Warden Rains told him to address the issue with the PRB. *Id.*

On August 30, 2017, Plaintiff received a response from the A.R.B. that was signed by Ann Lahr. (Doc. 13, p. 16). It "deflected the host-site denial onto the prisoner review board." *Id.* Plaintiff maintains that the PRB "has nothing to do with approving or denying host-site(s)" because this is the responsibility of the IDOC. *Id.*

Plaintiff sought relief in state court before filing this action. He filed a Petition for a Writ of Mandamus in Crawford County Circuit Court in November 2016. (Doc. 13, p. 16). The Petition was dismissed on ripeness grounds. *Id.* He filed a second Petition for Writ of Mandamus in Crawford County Circuit Court in June 2017. (Doc. 13, p. 17). That Petition remains pending. *Id.*

Plaintiff now sues the defendants for conspiring to deny his right to due process of law under the Fourteenth Amendment, for subjecting him to cruel and unusual punishment under the Eighth Amendment, and for unlawfully confining him under the Fourth Amendment and in violation of Illinois tort law. (Doc. 13, pp. 17-19). Plaintiff seeks declaratory judgment and

monetary damages against the defendants. (Doc. 13, pp. 19-20). He also seeks preliminary and permanent injunctive relief, in the form of an order requiring the defendants to cease all "unauthorized and illegal actions," and to review cases of convicted sex offenders and release each upon completion of the two-year period set forth under 730 ILCS § 5/3-3-9.[5] (Doc. 13, p. 19).

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court has organized the claims in Plaintiff's *pro se* First Amended Complaint into the following enumerated counts:

**Count 1 -** Defendants violated Plaintiff's right to procedural due process of law under the Fourteenth Amendment when they repeatedly declined to release him on parole for lack of a suitable host site.

**Count 2 -** Defendants violated Plaintiff's right to substantive due process of law under the Fourteenth Amendment when they repeatedly declined to release him on parole for lack of a suitable host site.

**Count 3 -** Defendants subjected Plaintiff to cruel and unusual punishment under the Eighth Amendment by holding him in IDOC custody beyond his term of his incarceration.

**Count 4 -** Defendants violated Plaintiff's right to equal protection of the law under the Fourteenth Amendment when they denied him release on parole for lack of a suitable host site.

**Count 5 -** Defendants subjected Plaintiff to an unlawful "search, seizure, arrest, [and] confinement," in violation of the Fourth Amendment and Illinois common law.

**Count 6 -** Defendants conspired to violate Plaintiff's constitutional rights under the Fourth, Eighth, and Fourteenth Amendments.

---

[5] In his original Complaint, Plaintiff did not seek release on his own behalf or on behalf of any other inmates. (Doc. 1, p. 27). He requested an order terminating all the defendants from their employment and banning them from further public employment or from holding public office. *Id.*

The parties and the Court will continue using these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion regarding their merits. **Any claims not identified above but encompassed by the allegations in the First Amended Complaint are considered dismissed without prejudice from this action.**

**Counts 1 and 2 – Due Process**[6]

The Fourteenth Amendment prohibits deprivations of life, liberty, and property without due process of law. U.S. CONST. amend. XIV. There are two kinds of due process: procedural and substantive. Plaintiff maintains that he was denied both.

**1.     Procedural Due Process**

A procedural due process claim requires the plaintiff to demonstrate that: (1) he has a cognizable liberty interest under the Fourteenth Amendment; (2) a state actor deprived him of that liberty interest; and (3) the deprivation was without due process. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (citing *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010); *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989)).

The United States Supreme Court has indicated that a convicted prisoner has no constitutional right in being released from prison before the expiration of his sentence. *Greenholz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). However, a

---

[6] The Court has considered whether Plaintiff's claims are barred by the doctrine announced in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a plaintiff cannot use § 1983 to recover damages for a constitutional violation due to conduct "whose unlawfulness would render a conviction or sentence invalid," unless the conviction has been reversed, expunged, or declared invalid. *Heck*, 512 U.S. 477, 486-87 (1994). At this stage, it does not appear that Plaintiff's claims are *Heck*-barred because they do not "*necessarily* imply the invalidity" of his conviction. *Heck*, 512 U.S. at 486-87 (emphasis added). He challenges the procedures applied by the defendants in determining his parole status, including the denial of his parents' residence as a host site. *Id. See also Murphy v. Madigan*, 2017 WL 3581175, *5 (N.D. Ill. 2017) (citing *Spencer v. Kemna*, 523 U.S. 1 (1998) ("If, for example, petitioner were to seek damages 'for using the wrong procedures, not for reaching the wrong result,' and if that procedural defect did not 'necessarily imply the invalidity of' the revocation, then *Heck* would have no application [at] all.").

liberty interest may arise from "an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations omitted). The Supreme Court of Illinois has held that the state's parole statute "does not create a legitimate expectation of parole that rises to the level of a liberty interest protected by procedural due process." *Hill v. Walker*, 948 N.E.2d 601, 605-06 (Ill. 2011). Once an inmate is placed on parole, however, the Seventh Circuit has explained that a liberty interest may arise in retaining the status of parolee. *Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 781 (7th Cir. 2008); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

According to the allegations in the First Amended Complaint, Plaintiff was paroled before being re-incarcerated in August 2015. (Docs. 13, 13-1). The allegations suggest that he was subsequently approved for release on parole, at least on paper, thereafter. *Id.* However, he was not actually released because he had no suitable host site. *Id.* Courts presented with similar factual scenarios have recognized a liberty interest. *See, e.g., Murdock v. Walker*, No. 08-C-1142, 2014 WL 916992, at *6 (N.D. Ill.) (plaintiff had cognizable liberty interest in being released from prison once PRB granted release on parole). For screening purposes, the Court finds that Plaintiff had a cognizable liberty interest.

The deprivation of a protected liberty interest occurs when "a right or status previously recognized by state law [is] distinctly altered or extinguished." *Murdock v. Walker*, 2014 WL 916992, at *8 (quoting *Paul v. Davis*, 424 U.S. 693, 711-12 (1976); *see Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 753-55 (7th Cir. 2012)). Plaintiff alleges that he was deprived of a protected liberty interest when he was denied release on parole following the initial PRB hearing in September 2015, the second hearing in March 2016, and the third hearing in September 2016.

Finally, Plaintiff claims that he was denied due process protections at each of his three PRB hearings and under 730 ILCS § 5/3-3-9. This includes the first PRB hearing before Gary Duncan and D. Wayne Dunn in September 2015, which was rescheduled for March 2016 without any decision regarding his alleged violations of Conditions #15 and #16; the second PRB hearing before D. Wayne Dunn in March 2016, which was rescheduled after the original violations of Conditions #15 and #16 were converted without notice to a violation of Condition #5 for lack of a suitable host site; and the third PRB hearing before Donald Shelton in September 2016, which was allegedly held without adequate notice and witnesses. Each time, Plaintiff was deemed eligible for release on parole, but denied release based on his lack of a suitable host site.

Despite the fact that he has alleged a due process claim, Plaintiff cannot proceed with the claim against the PRB members named in the First Amended Complaint. PRB members are accorded absolute immunity for their decisions. *See Wofford v. Walker*, 464 F. App'x 533, *2 (7th Cir. 2012) (citing 730 ILCS §§ 5/3-3-1(a), 5/3-3-9(a)); *Wilson v. Kelkhoff*, 86 F.3d 1438, 1445 (7th Cir. 1996). The Seventh Circuit has repeatedly held that "parole board members are absolutely immune from suit for their decision to grant, deny, or revoke parole." *Walrath v. United States*, 35 F.3d 277, 282 (7th Cir. 1994). "Absolute immunity protects board members not only for the decision to revoke . . . supervised release, but the board members' actions that are 'part and parcel' of the decision-making process." *See also Wilson*, 86 F.3d at 1445 (citing *Walrath*, 35 F.3d at 281). The decision *not* to revoke parole is part and parcel of this process, as is the decision to reschedule a PRB hearing. *Wilson*, 86 F.3d at 1445 (decisions regarding scheduling, notice, and the conduct of MSR revocation hearings "strike at the heart of the adjudicative function" that PRB members perform). Plaintiff's claim against the PRB members

who denied him release on parole in September 2015, March 2016, and September 2016 thus fails.

Further, IDOC officials are also accorded absolute immunity for "activities that are 'inexorably connected with the execution of parole revocation procedures and are analogous to judicial action.'" *Walrath*, 35 F.3d at 282. *See also Webb v. Godinez*, No. 14-CV-10281, 2017 WL 2653142 (N.D. Ill. 2017) (finding that the revocation of parole for lack of suitable housing was "clearly quasi-judicial in nature and therefore easily f[ell] under the umbrella of absolute immunity") (citing *Willis v. Prisoner Rev. Bd.*, 2014 WL 2467708, at *2 (N.D. Ill. June 6, 2013); *see also Thompson v. Duke*, 882 F.2d 1180, 1183, n. 3 (7th Cir. 1989) ("We . . . do not think that a significant distinction exists between the duties performed by those defendants who are members of the Department of Corrections and those defendants who are members of the Prison Review Board."); *Wilson v. Kelkhoff*, 86 F.3d 1438, 1444 (7th Cir. 1996) ("We have also held that prison officials who are not prisoner review board members are entitled to absolute immunity under circumstances where they perform acts with prosecutorial or judicial analogs.") (citing *Walrath*, 35 F.3d at 282). IDOC officials are otherwise not responsible for overseeing the parole process, including revocation hearings. *See Murdock v. Walker*, 2014 WL 916992, *9 (N.D. Ill. Mar. 10, 2014) ("Illinois law instills the PRB with power to conduct a [ ] revocation hearing, not the IDOC") (citing 730 ILCS 5/3-3-9e)). Their involvement is generally limited, if at all, to "assist[ing] eligible prisoners" and "report[ing] their findings to the PRB so that the PRB may consider the information in its release decisions." *Webb*, 2014WL 2653142 at *5 (citing *Brown v. Randle*, 2014 WL 2533213, *5 (N.D. Ill. June 5, 2014) (citation omitted)). IDOC employees lack authority to revoke parole and therefore cannot be held liable for the procedures implemented during a parole revocation proceeding. *Murdock*, 2014 WL 916992 at

*8 (finding that IDOC employees cannot be held liable for alleged constitutional violations during parole revocation hearings). Under the circumstances, Plaintiff's claim for money damages against the IDOC officials, in their individual capacities, likewise fails because these individuals were merely reporting their findings to the PRB to assist the board in making its decision.

Further, Plaintiff's official capacity claim for money damages against the PRB and IDOC defendants is barred by the Eleventh Amendment. Suits against state officials in their official capacities are deemed to be suits against the state, which are barred by the Eleventh Amendment. *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992).

State officials may nevertheless be sued in their official capacities for injunctive relief, which Plaintiff also seeks in this case. *Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002) ("state officials may be sued in their official capacities for injunctive relief") (internal quotation omitted). He specifically seeks to challenge the procedures used to determine housing and release of convicted sex offenders under 730 ILCS § 5/3-3-9. Claims of this nature have been recognized at screening against the IDOC Director (John Baldwin) and PRB Chair (Craig Findley), in their official capacities. *See Murphy v. Madigan*, 2017 WL 3581175 (N.D. Ill. 2017).

Accordingly, Count 1 shall receive further review against John Baldwin and Craig Findley, in their official capacities, based only on Plaintiff's request for declaratory judgment and injunctive relief aimed at correcting the procedures for selecting and approving host sites and releasing eligible prisoners on parole pursuant to 730 ILCS § 5/3-3-9. All other components of this claim shall be dismissed without prejudice against the defendants.

## 2.    Substantive Due Process

Substantive due process bars arbitrary or wrongful government actions "regardless of the fairness of the procedures used to implement them." *Perrault v. Wisconsin*, No. 15-cv-144-bbc, 2015 WL 5032656, *2 (W.D. Wis. 2015) (quoting *McCurry v. Moore*, 242 F. Supp. 2d 1167, 1178-79 (N.D. Fla. 2002) (summarizing cases) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). *See also Miller v. Henman*, 804 F.2d 421, 427 (7th Cir. 1986) ("the nub of a substantive due process claim is that some things the state just cannot do, no matter how much process it provides").  There is substantial overlap in claims brought pursuant to the Fourteenth Amendment's substantive due process clause and claims brought pursuant to the Eighth Amendment, which prohibits detention of prisoners beyond the termination of their sentence. *Childress v. Walker*, 787 F.3d 438, 439 (7th Cir. 2015).  The Supreme Court has indicated that claims covered by more specific constitutional provisions, such as the Eighth Amendment claim discussed below, should be analyzed under the standard appropriate to that specific provision instead of the substantive due process clause. *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998); *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Childress*, 787 F.3d at 439.  Because Plaintiff's claims are not sufficiently developed, the Court is unable to determine whether the claims are more appropriately analyzed under the substantive due process clause or the Eighth Amendment.  At this stage the Court will allow Plaintiff to proceed under both theories against those defendants identified in connection with Count 3 below. *See also Murphy v. Madigan*, 2017 WL 3581175, at *7 (N.D. Ill.).

### Count 3 – Cruel and Unusual Punishment

The Eighth Amendment prohibits the cruel and unusual punishment of prisoners, including punishment that is "totally without penological justification." *See Gregg v. Georgia*,

428 U.S. 153, 183 (1976); *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment "first . . . limits the kinds of punishment that can be imposed on those convicted of crimes; second, it proscribes punishment grossly disproportionate to the severity of the crime; and third, it imposes substantive limits on what can be made criminal and punished as such." *Ingraham v. Wright*, 430 U.S. 651, 667-68 (1997) (internal citations omitted). A plaintiff states a claim for an Eighth Amendment violation if he is detained for longer than he should have been due to the deliberate indifference of corrections officials. *Childress*, 787 F.3d at 439 (citations omitted) ("incarcerating a person beyond the term of his sentence without penological justification violates the Eighth Amendment as cruel and unusual punishment.")). *See also Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014); *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001). Whether Plaintiff's allegedly excessive confinement supports an Eighth Amendment cruel and unusual punishment claim and/or Fourteenth Amendment substantive due process claim remains to be seen.

Plaintiff alleges that several of the defendants were deliberately indifferent to his indefinite incarceration, when they repeatedly rejected his proposed host site and offered no assistance in locating, screening, or approving any alternative sites. (Doc. 13). Defendants Halliday and Hudleston repeatedly rejected Plaintiff's proposed host site, and Defendants Rains, Moss, Findley, and Baldwin failed to address the issue when Plaintiff complained directly to them. *Id*. At this stage, the Court cannot dismiss the Eighth Amendment claim in Count 3 or the substantive due process claim in Count 2 against these defendants. Accordingly, Counts 2 and 3 shall proceed against Defendants Halliday, Hudleston, Rains, Moss, Findley, and Baldwin. However, these claims shall be dismissed without prejudice against all other defendants for failure to state a claim upon which relief may be granted.

## Count 4 – Equal Protection

In the First Amended Complaint, Plaintiff merely mentions a denial of equal protection in a long list of other constitutional violations against various defendants. (Doc. 13, pp. 17-19). Allegations in the complaints of *pro se* litigants are to be liberally construed. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, even *pro se* litigants must provide some factual underpinning for their claims. A plaintiff cannot state a claim against a defendant by relying only on conclusory legal assertions or bare recitations of the elements of a cause of action. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Here, Plaintiff offers nothing more than conclusory allegations in support of his equal protection claim. (Doc. 13, pp. 17-18). This is not enough to satisfy *Twombly*. Accordingly, Count 4 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted. This dismissal does not prevent Plaintiff from re-pleading the claim in this or any other lawsuit, if he so chooses.

## Count 5 – Search, Seizure, Arrest

The Fourth Amendment does not govern Plaintiff's claims against the defendants. Plaintiff asserts this claim based on the search, seizure, and arrest that took place in Cook County in 2015 and led to his current confinement. However, no defendants are named in connection with these events. Parole Agent Joseph Blaha is the only individual Plaintiff identified, and Blaha is not a defendant in this action.

Plaintiff pursued a separate suit against Parole Agent Blaha in the United States District Court for the Northern District of Illinois, and that suit was dismissed for failure to state a claim upon which relief may be granted. *See Ortega, et al. v Blaha, et al.*, No. 17-cv-05610 (N.D. Ill., dismissed Nov. 9, 2017). Plaintiff does not explain how any of the defendants in this case were involved in the underlying search, seizure, or arrest. He offers no other allegations in the First

Amended Complaint that support a claim against the defendants under the Fourth Amendment. *See Twombly*, 550 U.S. at 570 (action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."). Under the circumstances, Count 5 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Count 6 - Conspiracy

The First Amended Complaint also supports no conspiracy claim against the defendants. A civil conspiracy claim is cognizable under § 1983. *Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002). It is generally enough in pleading a conspiracy "to indicate the parties, general purpose, and approximate date. . . ." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002). *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002). With that said, this claim requires a showing of some "concerted effort" between the parties. *Whitlock v. Brueggemann*, 682 F.3d 567, 577 (7th Cir. 2012). It is not enough to baldly assert the existence of a conspiracy, as Plaintiff has done in the First Amended Complaint. It is also not enough for the defendants to share the same objective. A conspiracy requires an agreement, express or implied, to reach the desired result. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013) (citation omitted)). The allegations, which are conclusory in fashion, support no claim. Accordingly, Count 6 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Pending Motions

**1.      Motion for Service of Process at Government Expense (Doc. 3).**

Plaintiff's Motion for Service of Process at Government Expense is **DENIED** because it is unnecessary. Plaintiff has been granted leave to proceed *in forma pauperis* in this § 1983

action.  (Doc. 10).  Therefore, the Court will order service as a matter of course on those defendants who remain in the action pursuant to this screening order.

2.      **Motion to Consolidate Cases (Doc. 6)**

Plaintiff's Motion to Consolidate Cases is also **DENIED**.  In the Motion, Plaintiff seeks permission to consolidate this case with an earlier civil rights action that he filed in the United States District Court for the Northern District of Illinois.  *See Ortega v. Blaha*, No. 17-cv-05610 (N.D. Ill. filed July 31, 2017).  That action involves two additional plaintiffs, entirely different defendants, and different legal theories.  The case did not survive preliminary review under 28 U.S.C. § 1915A and is now closed.  (Docs. 20-21).  Consequently, the Motion to Consolidate Cases is moot.

3.      **Motion for Recruitment of Counsel (Doc. 17)**

Plaintiff's Motion for Recruitment of Counsel shall be **REFERRED** to a United States Magistrate Judge for a decision.

<u>**Disposition**</u>

The Clerk is **DIRECTED** to **ADD** a Motion for Preliminary Injunction to the docket sheet in CM/ECF.

**IT IS ORDERED** that **COUNT 1** is subject to further review against Defendants **JOHN BALDWIN** and **CRAIG FINDLEY**, in their official capacities only, based on Plaintiff's request for declaratory judgment and injunctive relief.  All other aspects of this claim are dismissed without prejudice for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNTS 2** and **3** are subject to further review against Defendants **CONNIE HALLIDAY, BRITNEY HUDLESTON, DAVID RAINS, RANDY MOSS, CRAIG FINDLEY,** and **JOHN BALDWIN**, in their individual and official capacities.

These claims are dismissed against all other defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNTS 3, 4,** and **5** are also **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that Defendants **DONALD SHELTON, ARTHUR MAE PERKINS, PETE FISHER, TRACEY BUCKLEY, ERNEST W. VONZANT II, D. WAYNE DUNN, VONETTA HARRIS, WILLIAM NORTON, KENNETH D. TUPY, KACEY REDMAN, APRIL WAMPLER, ANN LAHR, R. ERICKSON, GARY DUNCAN,** and **SALVADOR DIAZ** are **DISMISSED** without prejudice from this action because the First Amended Complaint fails to state a claim upon which relief may be granted against any of them.

**IT IS ORDERED** that as to **COUNTS 1, 2,** and **3**, the Clerk of Court shall prepare for Defendants **CONNIE HALLIDAY, BRITNEY HUDLESTON, DAVID RAINS, RANDY MOSS, CRAIG FINDLEY,** and **JOHN BALDWIN:** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Docs. 13, 13-1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if

not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings, including a decision on the Motion for Recruitment of Counsel (Doc. 17) and handling of the Motion for Preliminary Injunction. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give

security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 15, 2018**

<u>s/ MICHAEL J. REAGAN</u>
**Chief Judge**
**United States District Court**