IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALDO ORTEGA,<br><br>      **Plaintiff,**<br><br>v.<br><br>CONNIE HALLIDAY, DAVID RAINS,<br>ROGER MOSS, CRAIG FINDLEY,<br>JOHN BALDWIN, and<br>BRITNI HUDLESTON,<br><br>      **Defendants.** | Case No. 3:17-CV-1091-NJR-GCS |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on the Motions for Preliminary Injunction (Docs. 19, 87, 101), filed by Plaintiff Aldo Ortega, an inmate of the Illinois Department of Corrections ("IDOC"), as well as the Motion for Summary Judgment filed by Defendants John Baldwin, Connie Halliday, Britni Huddleston, Roger Moss, Craig Findley, and David Rains (Doc. 76).[1] For the reasons set forth below, Ortega's motions are denied, and Defendants' motion for summary judgment is granted.

### BACKGROUND

Plaintiff Aldo Ortega was found guilty of reproducing and selling child pornography in Cook County, Illinois, in June 2012 (Doc. 13-1 at pp. 4-5). He was sentenced to four years of incarceration with a Mandatory Supervised Release (MSR)

---

[1] The Clerk of Court is **DIRECTED** to correct Defendants' names on the docket as follows: Britni Huddleston for Britney Hudleston and Roger Moss for Randy Moss.

term of three years to life (*Id.* at pp. 4, 8).[2] On December 13, 2013, Ortega was released from Centralia Correctional Center on MSR (*Id.*). After serving 19.5 months of his term of supervised release, on August 5, 2015, Ortega allegedly violated the conditions of his MSR (Doc. 13, p. 5; Doc. 13-1, p. 8).

On August 10, 2015, Ortega was served with a Parole Violation Report, which cited him for violating Condition #15 for possession of alcohol, smart cell phones, a computer, and sexually explicit material by a sex offender (Doc. 13-1, p. 7). It also cited Ortega for violating Condition #16 for failure to comply with sex offender counseling, computer and internet restrictions, and GPS monitoring (*Id.*). Because these alleged violations occurred at his original host site—his parents' house—the parole agent requested that the site be deemed unsuitable in the future (Doc. 13-1, pp. 8-10).

The Prisoner Review Board (PRB) held a revocation hearing in September 2015 (Doc. 34-3), at which Ortega could have been sentenced to up to two years of incarceration for violating the terms of his MSR pursuant to 730 ILL. COMP. STAT. § 5/3-3-9(a)(3)(C). Instead, the PRB continued the hearing on Ortega's violation to March 2016 (*Id.*).

On March 15, 2016, the PRB reconvened and noted that Ortega had "no suitable host site" to which he could be released (Doc. 34-4). Although Ortega's previous PRB Order stated he had violated Conditions #15 and #16, the March 15, 2016 Order now stated he had violated Condition #5, which requires the parolee to have a suitable host site (*Id.*). The PRB then continued consideration of Ortega's revocation for another six

---

[2] For persons committing certain kinds of felony sex offenses, "the term of mandatory supervised release shall range from a minimum of 3 years to a maximum of the natural life of the defendant." 730 ILCS 5/5-8-1(d)(4). The MSR period is an indeterminate sentence. *People v. Rinehart*, 962 N.E.2d 444 (Ill. 2012).

months (*Id.*).³

The PRB convened a third revocation hearing on September 7, 2016 (Doc. 13-1, p. 18). At this hearing, the PRB noted that the "violation date of record is 8/5/15," and that Ortega would have "Continued release eligibility 2 years after [8/5/15]." (*Id.*).

On March 8, 2017, Ortega received a communication from Field Services titled "RESIDENCE PLAN DENIED," which informed him that his host site (his parents' house) was denied for having unsuitable or unsafe conditions (Doc. 13-1, p. 22). Ortega filed a grievance related to the denial, requesting that his parents' home be reinstated as an approved host site since it had previously been approved and he had lived there for 19 months (Doc. 13-1 at pp. 29-31).

In August 2017, two years after his original parole violation, Ortega still had not found a suitable host site at which to reside while on supervised release. Thus, on August 4, 2017, Ortega was issued a Parole Violation Report, indicating he had violated Condition #5 for failing to provide a host site, and an IDOC warrant was issued (Doc. 13-1, pp. 24-25).

On August 7, 2017, Ortega filed a grievance stating that he had been declared a "violator" as of August 5, 2015, and was ordered re-confined for two years (Doc. 13-1 at pp. 35-36). Under 730 ILL. COMP. STAT. § 5/3-3-9(a)(3)(C), his two-year period of re-confinement expired on August 5, 2017 (*Id.*). Ortega asked that he be immediately released and his MSR be "revoked." Under Ortega's apparent understanding of the

---

³ Defendants assert that while Ortega's reincarceration was due to his violation of Conditions #15 and #16, he was also in violation of Condition #5, because he had no alternative, suitable host site to which to be released.

meaning of the word "revoked," he demanded that he be released without any MSR or parole terms still in effect (*Id.*). He further stated, "I don't want to hear or see that the PRB cannot revoke my parole as it clearly states in the statutes that they can absolutely revoke, and is revoked when they order reconfinement for parole violation(s)." (*Id.* at p. 36).

On September 20, 2017, the PRB conducted its revocation hearing for the 2017 host site violation (Doc. 34-5). The PRB's Order noted that Ortega put his parents' address for his host site, but the home was denied as unsatisfactory. It further noted that Ortega's future "[r]elease [will be] effective upon the approval of a viable host site as determined by IDOC." (*Id.*). Ortega, therefore, remained in prison for lack of a suitable host site.

Less than a month later, Ortega initiated this lawsuit. He is now proceeding on his First Amended Complaint (Doc. 13). After a threshold review of the First Amended Complaint (Doc. 18), the Court allowed Ortega to proceed on the following claims:

**Count 1:** Defendants IDOC Director John Baldwin and PRB chairman Craig Findley, in their official capacities, violated Ortega's right to procedural due process of law under the Fourteenth Amendment when they repeatedly declined to release him on parole for lack of a suitable host site, to the extent Ortega seeks declaratory and injunctive relief.

**Count 2**: Defendants John Baldwin, Craig Findley, Connie Halliday, Britney Hudleston, David Rains, and Randy Moss violated Ortega's right to substantive due process of law under the Fourteenth Amendment when they repeatedly declined to release him on parole for lack of a suitable host site.

**Count 3:** Defendants John Baldwin, Craig Findley, Connie Halliday, Britney Hudleston, David Rains, and Randy Moss subjected Ortega to cruel and unusual punishment under the Eighth Amendment by holding him in IDOC custody beyond his term of his incarceration.

*Motions for Preliminary Injunction*

In his Amended Complaint, Ortega also included a request for injunctive relief in the form of an order requiring Defendants: to cease all unauthorized and illegal actions; to conduct a review of all cases of inmates who have been convicted of sex crimes; and to credit their confinement if still ongoing or, if on MSR or parole as stated under 730 ILL. COMP. STAT. § 5/3-3-9, to release them upon completion of the two-year period and consider their obligation to the IDOC and PRB fulfilled (Doc. 13 at p. 19).

On January 16, 2019, Ortega filed a second motion for preliminary injunction (Doc. 87), and on April 19, 2019, Ortega filed a third motion for preliminary injunction (Doc. 101) that asks for the same relief. Ortega asks for an order providing that:

1. MSR Agreement, IDOC 0104,[4] not be required to be signed by people eligible for release from an institution that have been unable to obtain an approved host site or halfway house to begin their parole or MSR.

2. MSR Agreement, IDOC 0104, not be required for people eligible for release from IDOC "who have elected for assisting in the process to attend a program or residence in a facility established for the instruction or residence of people on parole or MSR."

3. The practice of issuing warrants for those not released on parole or MSR be discontinued.

4. The practice of serving people not released with violation reports and notice of charges be discontinued.

5. The practice of a supervising officer requesting warrants for those eligible for release that have not been released into a community be discontinued.

---

[4] Defendants explain that "Mandatory Supervised Release Agreement DOC 0104" is an agreement that defines the terms by which individuals are conditionally released from confinement on MSR. Inmates are required to sign this form, acknowledging understanding of the conditions and rules governing the conduct of individuals on MSR and agreeing to comply with those conditions.

> 6. The PRB refrain from conducting preliminary revocation hearings and/or final parole revocation hearings on persons not released from IDOC into a community.

Ortega explained in his motion that IDOC would require him to sign an MSR agreement prior to his release date. Then, when he presented himself for release—without a suitable host site—he would be deemed to be in violation of the MSR and a warrant would issue.

He also stated that IDOC claims to try to locate all places willing to accept a releasee who is not able to find a suitable location approved by the department. Yet, those who do not qualify for placement in a halfway house (*e.g.*, sex offenders with electronic monitoring) and who are unable to locate suitable housing are then issued a warrant as a violator even though they have never been released. He asserts that the department, through the issuance of the warrant, can then claim to be affording minimum due process and can continue to claim custodial rights long after the sentence has been completed.

In response, Defendants argue that Ortega's claims are barred by *Heck v. Humphrey* as he is, in essence, seeking a release from incarceration. They assert that because MSR conditions relate to the prisoner's freedom, challenges to such conditions must be brought in a *habeas* proceeding. Defendants further argue that Ortega has not met his burden of demonstrating the required elements for the issuance of a preliminary injunction.

The Court held a hearing on Ortega's motions on June 17, 2019 (Doc. 114). The Court subsequently appointed counsel for Ortega and requested supplemental briefing on the *Heck* issue and whether Ortega's claims are barred as an attempt to invalidate his

conviction (Docs. 115, 120).

On August 19, 2019, Ortega was released from prison on supervised release and permitted to stay at his parents' home (Doc. 125). As directed, appointed counsel for Ortega filed a supplemental brief addressing the *Heck* issue (Doc. 126). Counsel noted that Ortega's release from prison may make his motions for preliminary injunction moot—but argued instead that an injunction is still necessary to prevent the arbitrary and erroneous application of IDOC's procedures for selecting and approving Ortega's host site in the future. Counsel further argues that Count II and Count III are not *Heck*-barred because Ortega is challenging the IDOC's implementation of the host site rules rather than his actual conviction.

*Motion for Summary Judgment*

On November 9, 2018, Defendants filed a motion for summary judgment arguing, among other things, that this Court should revisit its decision that Ortega's claims are not barred by *Heck v. Humphrey* (Doc. 76). Defendants assert that if Ortega's interpretation of 730 ILL. COMP. STAT. § 5/3-3-9(a)(3)(C) is accepted, that would mean he is entitled to a release from prison without the MSR conditions imposed by the PRB and IDOC. Thus, his claims necessarily imply the invalidity of his conviction, as MSR terms are part of a defendant's judgment.

## DISCUSSION

I. **Preliminary Injunction**

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520

U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating:

1. a reasonable likelihood of success on the merits;
2. no adequate remedy at law; and
3. irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). "The absence of an adequate remedy at law is a precondition to any form of equitable relief." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). The requirement of irreparable harm eliminates those cases where, although the ultimate relief sought is equitable, the plaintiff can wait until the end of trial to get that relief. *Id.* Only if the plaintiff will suffer irreparable harm in the interim—that is, before a final judgment—can he obtain a preliminary injunction. *Id.*

Here, Ortega has failed to demonstrate that he will suffer irreparable harm absent injunctive relief. "An injury is irreparable for purposes of granting preliminary injunctive relief only if it cannot be remedied through a monetary award after trial." *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 703 (7th Cir. 2005).

Speculative injuries do not justify preliminary injunctive relief, and "a plaintiff cannot obtain a preliminary injunction by speculating about hypothetical future injuries." *Id.* at 704–706; *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) ("[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury.").

In his motion for injunctive relief, Ortega sought an order directing the IDOC to discontinue certain practices, including requiring prisoners preparing for release to sign IDOC 0104, issuing warrants for individuals not released on MSR, and serving those same people with violation reports. Because Ortega is no longer incarcerated and was released to his parents' home, however, any future injury he may suffer at the hands of Defendants is speculative at best. Because Ortega has not shown that he will suffer irreparable harm absent injunctive relief, his motions for preliminary injunction (Docs. 19, 87, 101) are denied.

Moreover, Ortega's claim in Count I for declaratory relief is moot. In determining whether a request for declaratory relief is moot, the Supreme Court has held that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment*." *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (citation omitted). As discussed, Ortega has been released from prison to his parents' home. Thus, there is no immediate risk that Defendants will violate Ortega's procedural due process rights.

The Court further finds that Ortega's claim does not fall within the "capable-of-

repetition-yet-evading-review exception" to the mootness doctrine. *See Eichwedel v. Curry*, 700 F.3d 275, 280 (7th Cir. 2012). For that to happen, Ortega would have to violate the conditions of his supervised release, be re-incarcerated as a result of the violation, and, upon becoming eligible for release, his host site would have to be deemed unsuitable. Ortega has not expressed any intent to continue violating the terms of his release. *See id*. Nor is there any certainty that, if he were re-incarcerated, his future host site would be determined unsuitable. The chances of the situation occurring again is too speculative to constitute a "continuing controversy" and "to justify the invocation of this exception to the general mootness standard." *Id.*

Accordingly, Ortega's motions for preliminary injunction (Docs. 19, 87, 101) are denied. Furthermore, Ortega's claim for declaratory judgment in Count I is dismissed with prejudice because it is moot.

## II. *Heck v. Humphrey*

In their motion for summary judgment and in their supplemental briefing on the issue as requested by the Court, Defendants argue that *Heck v. Humphrey* bars Ortega's claims. Defendants assert that Ortega's requested relief is prefaced on the belief that an offender's MSR term has been satisfied once an offender completes his two-year re-incarceration for violating his original MSR terms. Defendants argue that immediate release from prison, without being subjected to any further MSR, directly implicates the validity of his underlying sentence: four years' incarceration followed by an MSR term of three years to life.

The Court asked the parties to brief this issue in light of *Murphy v. Raoul*, in which

the Northern District of Illinois found that Section 1983 was the proper statutory vehicle under which a plaintiff should bring a constitutional challenge to the IDOC's implementation of Illinois's statutory scheme governing MSR for indigent sex offenders. *Murphy v. Raoul*, 380 F. Supp. 3d 731, 750 (N.D. Ill. 2019). In *Murphy*, indigent sex offenders argued that Illinois's scheme governing MSR created an illegal classification based on wealth, which indefinitely deprived offenders of their liberty as a result of their incapacity to pay for a suitable host site. *Id.* The court in *Murphy* noted that the case was about "fair procedure and not release from incarceration, although as a remedial matter they might end up there." *Id.* Thus, the court held that the plaintiffs' claims were not *Heck* barred, as the plaintiffs were disputing the procedures used in host site review—not the duration of their confinement. *Id.* "Put a little differently, the plaintiffs d[id] not seek to invalidate the fact or duration of their confinement. Rather, they [sought] to change the processes used in determining the penultimate condition of their confinement— location." *Id.*

Defendants distinguish *Murphy*, arguing that Ortega only brought up the procedures used by Defendants to deny his parents' residence as a host site as a passing reference (Doc. 116). Nor does he seek any relief from the procedures used by IDOC to deny his host site. Instead, Ortega is seeking relief that would result in his immediate release and would restrict or eliminate some of the conditions of his MSR.

The Court agrees with Defendants, as the relief Ortega is seeking with regard to Counts II and III is to be released from prison without any term of mandatory supervised release. In the operative complaint, Ortega states that prior to his parole revocation

hearing in March 2016, he asked his counselor to inform the PRB that he would be requesting "to be declared a violator." (Doc. 13 at ¶ 24). He then twice asked a member of the PRB to be declared a "violator," but the PRB member refused (*Id.* at ¶¶ 27, 28). Ortega apparently believed that, if he were declared a violator of MSR and his MSR was "revoked," he would no longer have to abide by the terms of MSR. Instead, he thought he would serve a two-year term of re-confinement under 730 ILL. COMP. STAT. § 5/3-3-9, then be released free and clear of any MSR terms.

On March 26, 2016, Ortega wrote a letter to Defendant Craig Findley, chairman of the PRB, requesting that his MSR be "revoked" because he no longer wished to be eligible for release onto parole (*Id.* at ¶ 45). On September 7, 2016, the PRB declared that Ortega had violated Condition #5 of his MSR and ordered him re-confined for a period of two years, beginning August 5, 2015 (*Id.* at ¶ 53).

Ortega then asserts that on August 5, 2017, he expected to be released from prison since he had completed his two-year confinement period (*Id.* at ¶¶ 62, 66). Ortega tried to explain that his MSR had been "revoked" when it was declared that he had violated Condition #5, and he only had to serve two years of confinement (*Id.* at ¶ 66). Warden Rains explained to Ortega that the reason he was not released was because he failed to provide a suitable host site to continue his MSR (*Id.* at ¶ 73).

Ortega's lawsuit appears to be premised on a misunderstanding of the word "revoked" as it applies to MSR. To have one's MSR revoked means that the privilege of being released from prison under supervision is taken away. In other words, the offender must return to prison. It does not mean that the sentence of MSR is removed from the

person's judgment or that the person is be released free and clear of any MSR terms once his re-incarceration is complete.

Ortega's misunderstanding of the law is apparent in his prayer for relief. In addition to compensatory and punitive damages, Ortega seeks an injunction ordering the IDOC to "conduct a review of all cases of inmates who have been convicted of a sex-related crime[] and credit confinement if still on or going on mandatory supervised release or parole as stated under 730 ILCS 5/3-3-9." He also asks the Court to order these offenders be released upon completion of the two-year period of re-confinement and to consider the offenders' obligations to the IDOC and the PRB to be fulfilled.

At the time the Court performed its merits review of the Amended Complaint pursuant to 28 U.S.C. § 1915A, the Court noted that Ortega's claims did not appear to be barred by the doctrine announced in *Heck v. Humphrey*, 512 U.S. 477 (1994), because it appeared he was challenging the procedures used by Defendants. Further review, however, indicates that the relief Ortega sought by filing the Amended Complaint was actually release from prison free and clear of any MSR terms. Even if categorized as a challenge to the procedures applied by Defendants, the relief ultimately sought would imply the invalidity of his MSR term of 3 years to life. *See Edwards v. Balisok*, 520 U.S. 641, 645 (1997) (holding that a challenge to a procedural defect can still imply the invalidity of a judgment and, therefore, would be barred by *Heck*). Thus, the Court grants Defendant's motion for summary judgment as to Counts II and III on the grounds that Ortega's claims are barred by *Heck v. Humphrey*.

## Conclusion

For these reasons, Ortega's Motions for Preliminary Injunction (Docs. 19, 87, 101) are **DENIED**. Ortega's claim in Count I is **DISMISSED with prejudice** because it is moot. Furthermore, the Motion for Summary Judgment filed by Defendants John Baldwin, Connie Halliday, Britni Huddleston, Roger Moss, Craig Findley, and David Rains (Doc. 76) is **GRANTED** as to Counts II and III.

Plaintiff Aldo Ortega shall recover nothing, and the Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: November 21, 2019

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**